

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
June 22, 2022 02:38 PM
     PAVAN PARIKH
   Clerk of Courts
 Hamilton County, Ohio
 CONFIRMATION 1203079
```

**JANOS ROPER**         **A 2202261**

**vs.**
**CITY OF CINCINNATI FIRE DEPARTMENT**

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND**

**PAGES FILED: 15**

EFR200

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JANOS ROPER<br>4216 Roundhouse Dr.<br>Cincinnati, OH 45245 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| CITY OF CINCINNATI<br>Fire Department<br>386 E. 9th St.<br>Cincinnati, OH 45202 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | ) | |

Plaintiff JANOS ROPER, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Roper is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant CITY OF CINCINNATI is a city fire department, with its central location at 386 E. 9th St., Cincinnati, OH 45202.

3. Defendant CITY OF CINCINNATI is a city within the state of Ohio.

4. CITY OF CINCINNATI ("CFD") is in charge of its Fire Department, where plaintiff is currently employed.

5. The relevant location of the events and omissions of this Complaint took place was at CFD's location and at the surrounding areas it serves.

6. CFD is, and was at all times hereinafter mentioned, Roper's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Americans

with Disability Act ("ADA") 42 U.S.C. § 12101, R.C. § 4113 et seq., and R.C. § 4112 et seq.

7. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (2), (3), and/or (6).

8. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), and/or (6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. Within 300 days of the conduct alleged below, Roper filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 22A-2020-01243) against Defendant ("EEOC Charge").

11. On or about April 23, 2021, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Roper regarding the EEOC Charge.

12. Roper received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

13. Roper has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

14. Within 300 days of the additional conduct alleged below, Roper filed a Charge of Discrimination with the EEOC (Charge No. 473-2022-00716) against Defendant ("EEOC Charge 2").

15. On or about April 4, 2022, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Roper regarding the EEOC Charge 2.

16. Roper received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 2.

17. Roper has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

18. Roper has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

19. Roper is a current employee of CFD.

20. Roper has been employed with CFD since on or about January 2, 2000.

21. Roper is currently employed by CFD as a safety officer/captain.

22. At all times noted herein, Roper was qualified for his position with Defendant and could fully perform the essential functions of his job, with or without a reasonable accommodation.

23. Roper is mixed-race (Asian, Caucasian, and African American), and thus is in a protected class for his race.

24. In or around 2019, Roper applied for and took a promotional exam with CFD.

25. During the exam, CFD had technical issues, resulting in Roper (and multiple other test takers) losing substantial points on their tests.

26. Immediately after the test, Roper reported the issues to Erica Burks (HR, African American) in writing via email.

27. Roper's email to Burks included protected wage complaints regarding his pay during the test, protected whistleblowing complaints regarding false information from vendors of the test, protected complaints regarding outright falsely graded questions (and questions messed up due to the aforementioned technical issues), and protected complaints of racial

3

discrimination regarding the testing itself, among other protected and non-protected complaints.

28. After Roper's issues with the exam and his protected complaints, he was passed over for a promotion.

29. CFD's refusal to promote Roper, despite his application and qualification for the role, was an adverse employment action against him.

30. CFD's purported reason (or lack thereof) for passing over Roper for the promotion was pretextual.

31. CFD actually passed over Roper for the promotion discriminatorily against his race and/or in retaliation against his previous protected complaints.

32. Roper's protected complaint to Burks was generally ignored, so he dual-filed a Charge of Discrimination with the EEOC and Ohio Civil Rights Commission ("OCRC") in or around late 2020. This was a protected activity.

33. In or around March 2020, Roper had a performance evaluation with Jason Vollmer (district chief, Caucasian).

34. Prior to this evaluation, Roper was consistently rated extremely well.

35. In this March 2020 evaluation, however, Vollmer rated Roper poorly (though still within a passing grade).

36. Vollmer cited multiple issues for this lowered grade, such as Roper's alleged failure to set up decontamination processes after certain fires (despite that this was not one of Roper's job functions), that he accurately followed traffic rules (Roper's grade was lowered *for following the law*), and other things.

4

37. Vollmer also instructed Roper to stop following traffic laws in this meeting. This was a demand that Roper break the law at Vollmer's behest.

38. Roper rebutted these alleged problems, and Vollmer increased his grade modestly in response, but still kept Roper at a low grade.

39. Vollmer's low grade of Roper was due to Roper's race. Disparately, Vollmer did not rate Caucasian firefighters poorly for following the rules or for not completing duties outside their job functions.

40. Also disparately, Vollmer did not enforce other rules on Caucasian firefighters while he did enforce them on Roper.

41. Roper repeatedly tried to work out the issues with Vollmer for the next few months, to no avail.

42. Vollmer's continued harassment, retaliation, and discrimination against Roper has been severe and pervasive throughout Roper's employment.

43. Roper, like any reasonable person in his situation, was offended by Vollmer's consistent harassment, retaliation, and discrimination.

44. Vollmer's and CFD's efforts to retaliate against and discriminate against Roper interfered with Roper's ability to perform his essential job functions. These efforts have continued throughout Roper's employment.

45. In or around summer 2020, Roper reported Vollmer's actions to Cincinnati's Civil Service Commission citing the discriminatory reasoning for Vollmer's ratings (discrimination complaints).

5

46. Roper, at the same time, also reported Vollmer's instruction to break traffic laws and falsification of government documents at the same time (whistleblower complaints). These protected complaints were both verbal and in writing.

47. Roper's complaints to Cincinnati's Civil Service Commission were protected activities.

48. Despite Roper's repeated protected complaints to his superiors and outside agencies, his complaints were largely ignored.

49. In or around September 2020, Roper was out of work due to a resurgence of an illness. He was out for approximately one month's time.

50. After Roper returned from his time out due to his illness, Vollmer treated him disparately worse.

51. Upon information and belief, Vollmer perceived Roper as disabled, placing him also in the protected disability class.

52. Roper, tired of the continued lack of response from CFD and discrimination from Vollmer, dual-filed a second Charge of Discrimination with the OCRC and EEOC. This was another protected activity.

53. From on or about March 6 – April 23, 2021, Roper took off work for health reasons. He used his regular PTO days for this time off.

54. During this PTO time off, Roper missed a training regarding HIPAA.

55. On or about May 5, 2021, Vollmer gave him two reprimands on the same day.

56. These were the only two reprimands Roper received in recent memory during his employment with CFD and were false and pretextual.

57. These reprimands were adverse actions against Roper and were given in retaliation for Roper's multiple protected complaints against Vollmer.

6

58. Since the above, Vollmer and CFD have continued to discriminate against and retaliate against Roper for his protected classes and actions by, among other things, continually passing over him for promotion(s), assigning him pretextual and false reprimands, treating him disparately compared to his Caucasian coworkers and able-bodied coworkers (and/or those CFD and Vollmer do not perceive as disabled).

59. On or about January 11, 2022, Roper was again passed over for a promotion.

60. As a result of the above, Roper has suffered damages.

## COUNT I: HOSTILE WORK ENVIRONMENT
## ON THE BASIS OF RACE DISCRIMINATION

61. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. Roper, as an African American, is in a protected class for his race.

63. During his employment with CFD, Roper was subjected to offensive and harassing conduct based on his race.

64. Defendant knew or should have known of the harassing conduct against Roper.

65. Defendant condoned, tolerated and ratified this harassing conduct.

66. This harassing conduct was severe and/or pervasive.

67. This harassing conduct was offensive to Roper.

68. This harassing conduct interfered with Roper' ability to perform his job duties.

69. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Roper.

70. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Roper.

7

71. Roper incurred emotional distress damages as a result of Defendant's conduct described herein.

72. As a direct and proximate result of Defendant's failure to promote Roper based upon race discrimination, Roper has suffered and will continue to suffer damages.

**COUNT II: FAILURE TO PROMOTE BASED ON RACE DISCRIMINATION**

73. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

74. Roper is African American. At all times relevant, Roper was a member of a statutorily-protected class under R.C. §4112.14(B) for his race.

75. During his employment, Roper applied for promotions at CFD.

76. Roper was fully qualified for these opportunities.

77. Roper was interviewed for these opportunities.

78. Defendant's purported reasons for failing to promote Roper was pretextual.

79. Defendant actually failed to promote Roper based on his race.

80. Roper's race was a determinative factor in Defendant's decision not to promote him.

81. Upon information and belief, Defendant promoted people outside Roper's protected race class in place of Roper.

82. Defendant violated R.C. §4112 et seq. when it failed to promote Roper based on his race.

83. Roper incurred emotional distress damages as a result of Defendant's conduct described herein.

84. As a direct and proximate result of Defendant's acts and omissions, Roper has suffered and will continue to suffer damages.

8

## COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY DISCRIMINATION

85. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Roper is in a protected class for his actual or perceived disabilities (described *supra*).

87. During his employment with CFD, Roper was subjected to offensive and harassing conduct based on his race.

88. Defendant knew or should have known of the harassing conduct against Roper.

89. Defendant condoned, tolerated and ratified this harassing conduct.

90. This harassing conduct was severe and/or pervasive.

91. This harassing conduct was offensive to Roper.

92. This harassing conduct interfered with Roper' ability to perform his job duties.

93. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Roper.

94. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Roper.

95. Roper incurred emotional distress damages as a result of Defendant's conduct described herein.

96. As a direct and proximate result of Defendant's failure to promote Roper based upon race discrimination, Roper has suffered and will continue to suffer damages.

## COUNT IV: FAILURE TO PROMOTE BASED ON DISABILITY DISCRIMINATION

97. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

9

98. Roper is African American. At all times relevant, Roper was a member of a statutorily-protected class for his actual or perceived disabilities (discussed *supra*).

99. During his employment, Roper applied for promotions at CFD.

100. Roper was fully qualified for these opportunities.

101. Roper was not given any interviews for the positions.

102. Defendant's purported reasons for failing to promote Roper was pretextual.

103. Defendant actually failed to promote Roper based on his race.

104. Roper's race was a determinative factor in Defendant's decision not to promote him.

105. Upon information and belief, Defendant promoted people outside Roper's protected race class in place of Roper.

106. Defendant violated R.C. §4112 et seq. when it failed to promote Roper based on his race.

107. Roper incurred emotional distress damages as a result of Defendant's conduct described herein.

108. As a direct and proximate result of Defendant's acts and omissions, Roper has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

109. Roper restates each and every prior paragraph of this complaint, as if it were fully restated herein.

110. As a result of the Defendant's discriminatory conduct described above, Roper complained of the discrimination, harassment, and disparate treatment he was experiencing.

10

111. Subsequent to Roper' complaints to management about harassment, bullying, and disparate treatment toward him, Defendant took adverse actions against Roper, including, but not limited to, passing over him for promotions.

112. Defendant's actions were retaliatory in nature based on Roper's opposition to the unlawful discriminatory conduct.

113. Pursuant to R.C. § 4112 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

114. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Roper, he has suffered and will continue to suffer damages.

**COUNT VI: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52**

115. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. As set forth above, Roper repeatedly made oral and written reports to Defendant about unethical, unlawful, and/or policy-violating behavior.

117. Roper repeatedly and consistently reported to Defendant what he reasonably believed to be unethical and/or illegal conduct in the workplace in violation of the law and company policies, including but not limited to, falsification of government documents and instructions to act unlawfully.

118. In the alternative, Roper reasonably believed he was reporting unethical and/or illegal behavior, in violation of the law and company policies, that constituted criminal acts that threatened the public's health or safety.

11

119. CFD has taken adverse employment actions against Roper, including but not limited to, passing over him for promotions.

120. Defendant's purported reasons for the adverse employment actions against Roper were pretext.

121. Defendant retaliated against Roper by taking adverse employment actions against him.

122. Defendant's actions against Roper's employment were in violation of R.C. § 4113.52.

123. As a direct and proximate result of Defendant's conduct, Roper suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: VIOLATIONS OF PUBLIC POLICY

124. Roper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

125. A clear public policy is manifested in R.C. §3737.03 regarding the duty of the state fire council to "make and publish reports on fire safety," as well as in R.C. §3737.23 in that "The fire marshal shall keep in his office a record of all fires occurring in the state, the origin of such fires, and all facts, statistics, and circumstances relating thereto which have been determined by investigations," ensuring a public policy in maintaining clean records and against falsifying government documents.

126. A clear public policy is manifested in R.C. §3737.221 against the negligent operation of motor vehicles by fire marshal employees, in that "The office of the fire marshal is liable for injury, death, or loss to person or property caused by the negligent

12

operation of any motor vehicle by its employees upon the public roads, highways, or streets in the state when the employees are engaged within the scope of their employment and authority, without regard to the proximity of that operation to the office of the fire marshal," ensuring a policy against instructing subordinates to break traffic laws.

127. Roper repeatedly made reports to Defendant about the unethical, unlawful, and/or policy-violating behavior that was going on there, including, but not limited to, instructions to break the law and falsify government documents.

128. Defendant's termination of Roper' employment jeopardizes these public policies by undermining the authority of Gubernatorial orders, federal relief policies, and state statutes.

129. Defendant's retaliation against Roper was motivated by Roper's conduct related to these public policies.

130. Defendant's purported reason for their adverse employment actions taken against Roper are pretextual.

131. Defendant's adverse employment actions Roper jeopardizes these public policies.

132. Defendant's adverse employment actions Roper were motivated by conduct related to these public policies.

133. Defendant had no overriding business justification for taking adverse employment actions Roper.

134. As a direct and proximate result of Defendant's conduct, Roper has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

13

**DEMAND FOR RELIEF**

WHEREFORE, Roper demands from Defendant the following:

a) Issue a permanent injunction:

  i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

  ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

  iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Plaintiff's personnel file of all negative documentation;

c) Issue an order to CFD to promote Plaintiff to district chief;

d) An award against each Defendant for compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

14

e) An award of punitive damages against each Defendant in an amount in excess of $25,000;

f) An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

g) An award of the taxable costs of this action; and

h) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
Matthew G. Bruce (0083769)
    Trial Attorney
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Janos.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Janos Roper*

## JURY DEMAND

Plaintiff Janos Roper demands a trial by jury by the maximum number of jurors permitted.

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)

15