IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JANOS ROPER, | : | Case No. 1:22-cv-652 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| CITY OF CINCINNATI, | : | |
| Defendant. | : | |

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**
**(Doc. 17)**

---

After not receiving promotions, firefighter Janos Roper sued the City of Cincinnati. This cause is before the Court on the City's motion to dismiss. For the reasons explained here, the Court **GRANTS IN PART** and **DENIES IN PART**.

**FACTUAL ALLEGATIONS**

Janos Roper works for the City of Cincinnati Fire Department. In 2019, Roper, who is Asian, African American, and Caucasian, took a test that the City uses to promote firefighters. But technical issues that arose during the test made him lose points. He reported the issues by email to Erica Burks, a human resources employee. In that email, he addressed concerns about his income, falsely graded questions, and racial discrimination around the testing itself. After this, the City passed him over for a promotion. He filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Ohio Civil Rights Commission

("OCRC"). (Compl., Doc. 3, ¶¶ 19-32.)

In March 2020, Jason Vollmer, the district chief, evaluated Roper's performance. Roper had high ratings before that evaluation. But Vollmer rated him poorly. Roper also alleges that Vollmer told him to "stop following traffic laws." (*Id.* at ¶ 37.) Vollmer raised his grade slightly after Roper objected, but it was still low. Roper believes Vollmer did not treat Caucasian firefighters the same way. (*Id.* at ¶¶ 23, 28-40.) He tried to make things work with Vollmer and the Fire Department. But eventually he reported Vollmer's actions to Cincinnati's Civil Service Commission. He also made whistleblower complaints about Vollmer's instructions for him to break traffic laws and falsify government records. Not much came of these complaints. And, after he came back from a period of sick leave in September 2020, Vollmer treated him worse than before. *Id.* at ¶¶ 41-51.)

The next spring, health issues kept Roper out of work for a month and a half. During this time away, he missed a training. After he came back, he received two reprimands. Early the next year, in January 2022, he was passed over for another promotion. (*Id.* at ¶¶ 53-59.) He filed a second Charge of Discrimination with the EEOC and OCRC. (Charge, Doc. 17-5, Pg. ID 415.)

This lawsuit followed.

## LAW AND ANALYSIS

The Federal Rules of Civil Procedure permit courts to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. R. 12(b)(6). A Rule 12(b)(6) motion tests the cause of action the plaintiff states in the complaint. *Golden v.*

2

*City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court accepts the complaint's factual allegations as true, but not its legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that puts forth "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive the rule. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, getting past a motion to dismiss is a matter of pleading sufficient facts. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility faces dismissal. *Iqbal*, 556 U.S. at 678.

Roper's complaint contains seven counts: (1) hostile work environment on the basis of racial discrimination; (2) failure to promote based on racial discrimination; (3) hostile work environment on the basis of disability discrimination; (4) failure to promote based on disability discrimination; (5) retaliation; (6) violation of Ohio's whistleblower statute, R.C. § 4113.52; and (7) violation of public policy. Defendant City of Cincinnati moves to dismiss each count.

### A. The City is the proper defendant.

The City argues that the complaint should be dismissed as to the Fire Department because it is not sui juris. *Est. of Fleenor v. Ottawa Cnty.*, 208 N.E.3d 783, 785 (Ohio 2022). The Ohio Revised Code, § 715.01, provides that "[e]ach municipal corporation is a body politic and corporate, which . . . [may] sue and be sued." No similar statute, the City argues, permits a plaintiff to sue a department, such as the Fire Department.

3

Roper does not appear to disagree. He responds that he properly named the City of Cincinnati as the defendant, and merely addressed his complaint to the City's Fire Department. So from his perspective the City of Cincinnati is the proper and, apparently, only party.

The pleadings on this score lack the most careful wording (*see* Compl., ¶¶ 2, 4) ("Defendant CITY OF CINCINNATI is a city fire department"; "CITY OF CINCINNATI ('CFD') is in charge of its Fire Department"), but the Court can deduce from the complaint that Roper has named the City as a defendant. Roper abandons any notion that the Fire Department is also a defendant. For good reason: The Fire Department is not sui juris and, for that reason, cannot be sued. *Lee v. City of Moraine Fire Dep't*, No. 3:13-CV-222, 2015 WL 914440, at *9 (S.D. Ohio Mar. 3, 2015). Municipal corporations, like the City, are subject to lawsuits. R.C. § 715.01; R.C. § 703.01. But the Fire Department is merely a creation of the City and cannot be sued. R.C. § 715.05; *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Hill v. Vill. of Hamler*, No. 3:18-CV-2726, 2019 WL 4813002, at *3 (N.D. Ohio Sept. 30, 2019). Accordingly, to the extent Roper designates the Fire Department a party, it is dismissed. The Court will proceed on the understanding that the City is the sole defendant.

### B. Hostile work environment (Counts 1 and 3)

Roper brings two hostile work environment claims, one for racial discrimination, another for disability discrimination. The City argues that Roper failed to exhaust his administrative remedies and that his allegations fail to meet the *Iqbal/Twombly* plausibility standard. The first argument disposes of these claims.

An employee alleging workplace discrimination must first file an administrative charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). That charge must describe the action or practices the employee challenges. 29 C.F.R. § 1601.12(b). He may not bring claims in a lawsuit that he did not include in his EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) ("Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.").

Roper filed charges with the EEOC before filing in federal court. The first was dismissed in April 2021. He did not file suit within the 90-day deadline, so this case cannot stand on the first charge. *Tate v. United Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003). He filed a second charge in 2022, complaining he had been "passed over for promotions due to my race (multi-racial), disabilities, and in retaliation against my protected complaints, among other things." (Charge of Discrimination, Doc. 17-5, Pg. ID 415.) The Court may consider these documents without converting the motion to one for summary judgment under Rule 12(d), because the complaint refers to them and they are central to his claims. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

The City is correct that Roper failed to exhaust his administrative remedies. The Sixth Circuit's decision in *Younis* shows why. In *Younis*, an employee lost his job and filed a complaint with the EEOC. He limited his allegations to discrimination based on his religion and national origin. But after he received his right-to-sue-letter and filed a federal lawsuit, he added a hostile work environment claim. *Younis*, 610 F.3d at 360. In

5

his EEOC charge, Younis had only cited "discrete acts of alleged discrimination," none of them claims of hostile work environment. *Id.* at 362. The district court found that he had failed to exhaust his administrative remedies. For that reason, the court lacked jurisdiction over the hostile work environment claim. *Younis v. Pinnacle Airlines, Inc.*, No. CV 07-02356, 2008 WL 11411604, at *5 (W.D. Tenn. Aug. 14, 2008). In affirming, the Sixth Circuit held that alleging discrete acts of discrimination in an EEOC charge does not also support "a subsequent, uncharged claim of hostile work environment 'unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.'" *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)).

There is very little daylight between *Younis* and this case. To bring a hostile work environment claim, a plaintiff needs to point to harassment that "unreasonably interferes with his work performance and creates an objectively intimidating, hostile, or offensive work environment." *Id.* (cleaned up). Roper's EEOC charge asserts that he had been passed over for promotions because of his race, disability, and in retaliation against his protected complaints, "among other things." (Charge, Doc. 17-5, Pg. ID 415.) (The words "among other things" refer to things he accused the City of retaliating against him for — not other forms of unlawful conduct, such as a hostile work environment.) But not getting promoted is a significant distance from enduring workplace harassment that unreasonably interferes with his work performance or harassment that creates an objectively intimidating, hostile, or offensive work environment. *See id.* Roper fails to meet that standard. Indeed, by comparison, Roper's EEOC charge is even vaguer than the one in *Younis*.

Thus, Roper has failed to show that he exhausted his administrative remedies tied to his claims for hostile work environment. As a result the Court **GRANTS** the City's motion as it relates to the hostile work environment claims and dismisses Counts 1 and 3 with prejudice. *Jones v. City of Franklin*, 468 F. App'x 557, 566 (6th Cir. 2012); *Reynolds v. United States*, No. 3:20-CV-00222, 2022 WL 976907, at *6 (S.D. Ohio Mar. 31, 2022), *aff'd sub nom. Reynolds v. Kendall*, No. 22-3449, 2023 WL 335284 (6th Cir. Jan. 20, 2023).

### C. Failure to promote (Counts 2 and 4)

Roper accuses the City of failing to promote him because of his race and his disability. The City attacks Roper's failure-to-promote claims in two ways. First, it argues that Roper fails to lay out a prima facie case. Second, the City asserts promotions occur based on a state statute that provides for employees' placement on an "eligible list." This regime, in the City's view, is a legitimate, nondiscriminatory reason for its actions. At the Rule 12(b)(6) stage, however, neither argument succeeds.

*Prima facie case*. The City claims that Roper has not laid out a prima facie case. This argument is premature. An "employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). *Swierkiewicz* remains good law after *Iqbal* and *Twombly*, and it is generally improper to dismiss a claim just because someone does not plead a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *James v. Hampton*, 592 F. App'x 449, 460 (6th Cir. 2015). Instead, the normal pleading rules apply. *Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 844 (S.D. Ohio 2020). If a complaint alleges facts that infer racial discrimination, it will get past Rule 12(b)(6). *James*, 592 F. App'x at 461.

7

Roper has pled enough facts to state a plausible claim. He belongs to protected classes as a racial minority and someone who has an actual or perceived disability. And, even though he was qualified for promotions, the City passed him over. Other non-minority employees received promotions instead of him. He also challenges the integrity of the very tool that determined eligibility: the examination itself. These pleadings carry him past the motion-to-dismiss stage. *See id.*

*Eligible list.* The City also argues that it promotes employees according to a state statute. R.C. § 124.46 provides that examinees with a passing grade are placed on an eligible list, ranked by grade. The highest-scoring examinee is placed first. The person with the highest grade "shall be appointed in the case of a vacancy." R.C. § 124.46. These "eligible lists" continue for two years at a time. If a vacancy occurs within that two-year period, the lists "continue for the purpose of filling the vacancy until the vacancy has been filled." *Id.* According to the City, during the two years the eligible list was active, eleven vacancies opened up at the Fire Department. Roper was sixteenth. So the reason the City never considered him for a promotion was simply that not enough vacancies opened up. In support of its argument, the City includes two exhibits: a copy of the relevant eligible list, arranging candidates by their test scores; and two employee summary reports showing that minority candidates received promotions. (Ex. D, Doc. 17-6, Pg. ID 417; Ex. E, Doc. 17-7, Pg. ID 418-19.)

This argument faces two problems.

First, the City relies on facts outside the pleadings. Courts can sometimes consider material outside the pleadings, such as matters of public record. *Amini*, 259 F.3d at 502.

8

The City concedes that the eligible list and the employee summary reports are public records. But that is still not enough to prove the City's point. The eligible list is irrelevant without knowing how many vacancies opened up during the time in question. Understanding this, the City purports that only eleven vacancies became open and, because Roper was sixteenth, he did not get a promotion. But that assertion lacks any factual support, within the pleadings or otherwise. So it cannot be a basis for dismissing Roper's failure-to-promote claims.

The second problem with the City's argument is that it fails to address the fact that Roper attacks the integrity of the test itself. If the test was flawed, then so were the results of the eligible list. So the fact that he appears sixteenth on the list does not, at the Rule 12(b)(6) stage, absolve the City of liability.

For these reasons, the Court **DENIES** the City's motion to dismiss as it relates to the failure-to-promote counts. The case will proceed on counts 2 and 4.

### D. Retaliation (Count 5)

Roper complained to HR of various forms of discrimination. (Compl., Doc. 3, ¶¶ 26-28.) Afterward, the City allegedly took adverse actions against him. This included passing him over for promotions. He says these actions were retaliatory.

Not so, the City maintains: Roper fails to make out a prima facie case of retaliation.

The City's position here suffers the same shortcoming as its failure-to-promote argument. A plaintiff need not plead a prima facie case of retaliation to survive Rule 12(b)(6). *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *5 (6th Cir. Aug. 2, 2022). The *McDonnell Douglas* framework is "an evidentiary standard, not a pleading

requirement." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 510-11). Rather, the test is whether Roper has pled a plausible case for retaliation. *Id.*

And that he has. Roper claims he reported test-related issues to a human resources representative. His concerns pivoted on the test's integrity. He and other test takers ran into technical issues during the test. They missed out on points as a result. He complained about the test. Later he raised whistleblower concerns. After expressing his concerns, he missed out on promotions. These allegations plead facts that let the Court draw a reasonable inference that the City retaliated against him for lodging complaints.

Anticipating this outcome, the City modifies its position in its reply brief: Roper's lawsuit itself is untimely. He received his Dismissal and Notice of Rights letter on April 23, 2021, but did not file suit until over a year later. But here the City sidesteps Roper's second Charge of Discrimination. And its motion admits that he received a Dismissal and Notice of Rights letter on April 4, 2022. Roper sued on June 22, 2022—well within the 90-day window. (*See* Motion, Doc. 17, Pg. ID 178.) So his lawsuit is timely.

The City offers one last argument related to timeliness: its action was not "continuing in nature" because, once the test was over, any unlawful employment conduct was too. But this stance misreckons Roper's allegations. Roper is not just challenging the way the exam was administered; he is challenging the fallout of complaining about it. As long as promotions were available, he faced retaliation. His complaint states this clearly: he has continued to endure retaliation by being continually passed over for promotions, among other things. (Compl., Doc. 3, ¶ 58.)

10

Roper has thus pled facts that state a claim for retaliation. The Court **DENIES** the City's motion pertaining to retaliation. Count 5 will proceed.

### E. Whistleblower claim, R.C. § 4113.52 (Count 6)

Roper also sues the City for violating Ohio's whistleblower statute, R.C. § 4113.52. The City allegedly falsified government documents and told him to act unlawfully. He claims that he repeatedly made oral and written reports about the City's unethical and unlawful behavior. In return, the City refused to promote him. The City attacks this claim, arguing that Roper did not comply with R.C. § 4113.52. It maintains that Roper's accusation of "illegal conduct in the workplace" fails to meet the whistleblower statute's pleading standard.

Employees must "strictly comply with the dictates of R.C. 4113.52" to unlock its protection. *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 946 (Ohio 1995). A prima facie case under R.C. § 4113.52 requires a whistleblower to show that (1) he engaged in activity which would bring him under the protection of the statute, (2) was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Wood v. Dorcas*, 757 N.E.2d 17, 23 (Ohio App. 2001). Unlike in his federal retaliation claim—which does not require the pleading of a prima facie case to survive a Rule 12(b)(6)—the relief Roper seeks here is grounded in state law, not *McDonnell Douglas*. So the *Swierkiewicz* line of cases does not apply. As a result, a plaintiff's failure to plead a prima facie case may result in dismissal. *See Contreras*, 652 N.E.2d at 946; *Kaiman v. Teledyne Instruments, Inc.*, No. 1:22-CV-100, 2022 WL 1469796, at *3 (S.D. Ohio May 10, 2022).

11

Roper took the exam in 2019. "Immediately after the test," he *emailed* Erica Burks about the issues. (Compl., Doc. 3, ¶¶ 26-27.) Later in the complaint, he alleges: "As set forth above, Roper repeatedly made oral and written reports to Defendant." (*Id.* at ¶ 116.) The problem here is that, looking at what he "set forth above," nowhere does he allege any oral communication. He contacted Burks, once, through email. But the whistleblower statute requires him to first orally report a violation, then file a written report. R.C. § 4113.52(A)(1)(a); *Kaiman v. Teledyne Instruments, Inc.*, No. 1:22-CV-100, 2022 WL 1469796, at *3 (S.D. Ohio May 10, 2022) ("the statute is clear that an oral report must be made before a written report is filed"). So, here, Roper's single email communication falls short of strictly complying with the statute. *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 946 (Ohio 1995); *Kaiman*, 2022 WL 1469796, at *3.

As Roper failed to plead the essential elements under R.C. § 4113.52, the Court **GRANTS** the City's motion as to Count 6.

### F. Violation of public policy (Count 7)

Lastly, Roper sues the City for violating public policy. He anchors this claim in various Ohio statutes. First is R.C. § 3737.03(A), which provides that a state fire council must "make and publish reports on fire safety." Second is R.C. § 3737.23, requiring fire marshals to keep records of all fires; this statute, in Roper's view, reflects a public policy in maintaining clear records and against falsifying government documents. (Compl., Doc. 3, ¶ 125.) Third is R.C. § 3737.221(B), providing that the office of the fire marshal is liable for injuries and losses related to the negligent operation of any motor vehicle operated by its employees. Roper asserts that this statute enshrines a policy against

instructing subordinates to break traffic laws. (*Id.* at ¶ 126.)

The City targets this claim, contending that the law does not recognize a claim for violating public policy. The closest analogue the City offers is a claim of *discharge* in violation of public policy; and such a claim would not apply because the City never discharged Roper. In response, Roper argues that *Powers v. Springfield City Sch.*, No. 98-CA-10, 1998 WL 336782, at *7 (Ohio Ct. App. June 26, 1998) extended the scope of Ohio common law to allow plaintiffs to bring claims for wrongful denial of promotion in violation of public policy.

The problem is that courts have roundly rejected *Powers*. The Sixth Circuit has gone on record to say that "Ohio courts do not recognize policy claims for failure to promote." *Evans v. Toys R Us, Inc.*, 221 F.3d 133, *11 (6th Cir. 2000). *Evans* explicitly disapproved of *Powers*, noting that a more recent Ohio case, *Doneworth v. Blue Chip 2000 Commer. Cleaning*, 1998 Ohio App. LEXIS 3171, *22, had reached a contrary conclusion. This Court too has refused to follow *Powers*. *Fijalkowski v. Belmont Cnty. Bd. of Commissioners*, No. 2:17-CV-0195, 2021 WL 1964478, at *13 (S.D. Ohio May 17, 2021) ("This Court similarly declines to extend Ohio law to include a failure to promote as an actionable underlying claim for tortious violation of public policy."). Stripped of *Powers*, Roper's public policy claim lacks any foundation in law.

Accordingly, the Court **GRANTS** the motion to dismiss as it relates to Count 7.

### G. The Court denies leave to amend.

Roper seeks leave to amend his complaint in one paragraph in his response memorandum. The City is opposed.

13

Courts seldom grant such minimal efforts to amend the complaint. When the request for leave comes in the form of "throwaway language" instead of an adequate motion, and without a copy of the revised complaint, it is appropriate deny that request. *Kuyat v. BioMetric Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). Indeed, a request for leave to amend contained within a memorandum in opposition to a motion to dismiss, "almost as an aside," is not an actual motion to amend. *Alexander v. Eagle Mfg. Co., LLC*, 714 F. App'x 504, 511 (6th Cir. 2017) (citation omitted). And if that is the case, then such requests also disregard Rule 7(b)(1), which provides that a request for a court order "must be made by motion."

Thus, the Court will not grant Roper leave to amend his complaint.

## CONCLUSION

For the reasons explained, the Court orders as follows:

(1) The Court **GRANTS** the City's motion to dismiss with respect to Counts 1, 3, 6, and 7 and **DISMISSES** those causes of action.

(2) The Court **DENIES** the City's motion to dismiss with respect to Counts 2, 4, and 5. This matter will proceed on these counts.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: /s/ Matthew W. McFarland
JUDGE MATTHEW W. McFARLAND