UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANOS ROPER,

    Plaintiff,

v.

CITY OF CINCINNATI,[1]

    Defendant.

Case No. 1:22-cv-652

McFarland, J.
Bowman, M.J.

**MEMORANDUM ORDER AND OPINION**

United States District Judge Matthew W. McFarland has referred a limited discovery dispute in this case to the undersigned magistrate judge. Pursuant to local practice, the parties initially had contacted the Court for an informal hearing before Judge McFarland. As directed, the parties submitted informal emails that summarized their dispute. Upon referral of the dispute to the undersigned, the undersigned reviewed the relevant emails.[2] Thereafter, due to the Court and the parties being unable to set a timely phone conference, the undersigned directed both parties to file simultaneous briefs to further set forth their respective positions. (*See* Docs. 27-31). Now fully advised, the Court concludes that the City's construed motion to compel should be DENIED.

---

[1]The undersigned's last Order identified the Defendant as the "City of Cincinnati Fire Department," as reflected on the docket sheet of the electronic record of this case. Without directing the Clerk of Court to alter that record, on July 11, 2023, U.S. District Judge McFarland concluded that the City of Cincinnati is the only properly named Defendant. (Doc. 20 at 4, PageID 524). The Court acknowledged that Plaintiff had "abandon[ed] any notion that the Fire Department is also a defendant." (*Id*.) Consistent with Judge McFarland's ruling, the caption of this Order refers to the Defendant as the "City of Cincinnati."

[2]The dispute concerns the relevant time frame and other details pertaining to the production of Plaintiff's medical records. Relevant emails include a December 20, 2023 email from Assistant City Solicitor Katey Baron to the Court, a responsive email dated December 27, 2023 from Attorney Sam Long, and several related emails between counsel dated February 20 and February 21, 2024.

I. **Background of Dispute and Allegations of the Complaint**

The City seeks an order requiring Plaintiff Roper to provide the City with medical releases dating back to 2020. Roper objects to the scope of those releases on relevancy grounds. He also objects to the City's insistence that it be able to obtain his records directly from his treatment providers, rather than through Roper's counsel. To determine whether the discovery is "relevant to any party's claim or defense" under Rule 26(b)(1), Fed. R. Civ. P., the Court briefly reviews the allegations of the complaint.

In so doing, the undersigned draws heavily from the summary previously set forth by Judge McFarland in his July 11, 2023 order granting in part the City's motion to dismiss:

> Janos Roper works for the City of Cincinnati Fire Department. In 2019, Roper, who is Asian, African American, and Caucasian, took a test that the City uses to promote firefighters. But technical issues that arose during the test made him lose points. He reported the issues by email to Erica Burks, a human resources employee. In that email, he addressed concerns about his income, falsely graded questions, and racial discrimination around the testing itself. After this, the City passed him over for a promotion. He filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Ohio Civil Rights Commission ("OCRC"). (Compl., Doc. 3, ¶¶ 19-32.)
>
> In March 2020, Jason Vollmer, the district chief, evaluated Roper's performance. Roper had high ratings before that evaluation. But Vollmer rated him poorly. Roper also alleges that Vollmer told him to "stop following traffic laws." (*Id*. at ¶ 37.) Vollmer raised his grade slightly after Roper objected, but it was still low. Roper believes Vollmer did not treat Caucasian firefighters the same way. (*Id.* at ¶¶ 23, 28-40.) He tried to make things work with Vollmer and the Fire Department. But eventually he reported Vollmer's actions to Cincinnati's Civil Service Commission. He also made whistle blower complaints about Vollmer's instructions for him to break traffic laws and falsify government records. Not much came of these complaints. And, after he came back from a period of sick leave in September 2020, Vollmer treated him worse than before. (*Id.* at ¶¶ 41-51.)

(Doc. 20 at 1-2, PageID 521-22).

The referenced EEOC Charge was filed on January 27, 2020 and alleged only race discrimination. It was dismissed on April 23, 2021. But the instant lawsuit does not stand on that first EEOC Charge.[3] (Doc. 20 at 5, PageID 525; *see also id*., at 10, PageID 530, discussing untimeliness of lawsuit based on claims in first Charge). Instead, the claims in *this* lawsuit arises out of a second EEOC Charge. In that second EEOC Charge, filed Feb. 10, 2022, Roper alleges additional discrimination by the City not only based on his race, but also based on "disabilities, and in retaliation against my protected complaints, among other things." (Charge of Discrimination, Doc. 17-5, PageID 415). Roper received a Dismissal and Notice of Rights letter on the second Charge on April 4, 2022.

The present discovery dispute is centered on Plaintiff's claim of discriminatory treatment based on actual or perceived disability. Therefore, the undersigned focuses on allegations relevant to that claim. Those allegations begin with the period of sick leave that Roper took in September 2020, which he alleges began a period of disparate treatment based on his perceived disability. (*See*, *e.g*., Doc. 3, ¶49-51, alleging that "[i]n or around September 2020, Roper was out of work due to a resurgence of an illness," that after his return, "Vollner treated him disparately worse," due to Vollmer's perception of Roper "as disabled.").

> The next spring [2021], health issues kept Roper out of work for a month and a half. During this time away, he missed a training. After he came back, he received two reprimands. Early the next year, in January 2022, he was passed over for another promotion. (*Id*. at ¶¶ 53-59.) He filed a second Charge of Discrimination with the EEOC and OCRC. (Charge, Doc. 17-5, Pg. ID 415.)

---

[3]Plaintiff filed suit after the dismissal of his first EEOC Charge on July 19, 2021. Defendant removed to this Court on August 10, 2021. *See Roper v. City of Cincinnati Fire Dept*., No. 1:21-cv-512-MRB. On October 7, 2021, the parties filed a Stipulated Notice of Dismissal without prejudice. (*Id*., Doc. 9).

(Doc. 20 at 1, PageID 522).

Roper's second EEOC Charge, alleging a failure to promote because of both race and disability, and retaliation,[4] gives rise to this timely-filed lawsuit. (*See* Doc. 20 at 10, PageID 530; Complaint, Doc. 3, Counts 2, 4 and 5). Although the Court previously granted the City's motion to dismiss other claims, the Court permitted those three claims to proceed. (Doc. 20).

II.     Analysis

**A. The Temporal Scope of Roper's Disability Discrimination Claim**

The current dispute concerns the scope of discovery that relates to Plaintiff's "failure-to-promote" claim based on actual or perceived disability. (Count 4). Focusing on the fact that Plaintiff has been employed by the City since January 2000, the City seeks the execution of releases "for each and every healthcare provider" since January 1, 2001, as well as copies of all "documents, notes, emails, or other forms of communication between Plaintiff and any treating physicians" since the date of hire. (Requests for Production 5 and 6).

Roper reasonably objects to providing nearly a quarter-century of records to support a failure-to-promote claim that is necessarily limited in temporal scope to the claims set forth in his second EEOC Charge. Prior to the City turning to this Court to resolve the dispute, Roper executed two medical releases that limited the time frame for records to January 1, 2015 to the present. Roper further objects to providing releases

---

[4]The Court previously rejected the City's argument that the retaliation claim was limited to the date of the exam. The Court reasoned that Roper had plausibly alleged being subjected to retaliation "by being continually passed over for promotions, among other things" based on "the fallout of complaining about [the exam]." (Doc. 20 at 10, PageID 530, citing Complaint Doc. 3, Count 5).

4

concerning any treatment for emotional distress or other mental impairment on grounds that he was not treated or diagnosed with any type of "mental illness issues" prior to 2018.

In support of the unusually broad temporal scope it seeks, the City relies heavily on the single allegation in the complaint that states Plaintiff's hire date as January 2, 2000. (Doc. 1, ¶ 20). The City also points to a factual allegation set forth in the "Disability" claim that "*at all times relevant*, Roper was a member of a statutorily protected class for his actual or perceived disabilities," (Doc. 3 at ¶ 98). Conflating the two discrete allegations, the City argues that "at all times relevant" must mean since Plaintiff's hire date. (*See* Doc. 28 at 4, PageID 570). The City further notes Roper's allegation that he experienced "emotional distress" as a result of the City's conduct to support its request for broad discovery into his mental health records. (Doc. 3 at ¶¶ 83, 107).

In a final argument, the City contends that it should be entitled to the discovery it seeks based on Roper's own discovery requests "that span the entirety of Roper's Career." The City complains that since it produced responsive documents spanning that timeframe, so too should Roper.[5] But the scope of relevant discovery for each claim or defense depends on a variety of factors. Here, the City's failure to object to the temporal scope of Roper's request (whatever it may have been) has no bearing on the relevancy of the City's request for more than two decades of sensitive medical records to Plaintiff's time-limited disability claim.

The City's other arguments concerning the temporal scope of the disability allegations are equally unpersuasive. As Judge McFarland previously noted, some of the

---

[5]The City does not specify what information was provided by the City, whether a copy of Roper's personnel file or otherwise.

allegations of the complaint "lack the most careful wording." (Doc. 20 at 4, PageID 524).[6] That said, no reasonable interpretation of the complaint could possibly suggest that Plaintiff is alleging that the City discriminated against him based on actual or perceived disability beginning on his date of hire. The earliest set of allegations that reference a perceived disability relate to Vollner's conduct following Plaintiff's return from a September 2020 leave of absence. In addition to that period of leave, the complaint alleges that Plaintiff missed work from March 6-April 23, 2021 "for health reasons" (Doc. 3, ¶ 53). Plaintiff further alleges that two reprimands he received in May 2021 were "false and pretextual," (*id*., ¶ 56). Finally, he alleges that "<u>since the above [date or dates]</u>," Defendant has continued to discriminate against him and to retaliate by "continually passing over him for promotion(s), assigning him pretextual and false reprimands, treating him disparately compared to his Caucasian coworkers and able-bodied coworkers" and/or as compared to those who the City does not perceive as disabled. (*Id*., ¶ 58, emphasis added). In context, the *earliest* relevant dates that can be inferred from the "since the above" phrase are either the date of the 2019 exam (for the claim of race discrimination and retaliation) or September 2020 (for the claim of disability discrimination).

In short, the Court agrees with Plaintiff that the temporal scope of facts relating to his disability discrimination claim begins in September 2020. Some amount of discovery into Plaintiff's medical history prior to that date is fair and reasonable. But Plaintiff has already provided medical releases that permit Defendant to obtain relevant records beginning on January 1, 2015 through the present. That time period is more than sufficient

---

[6] In addition to the examples provided by Judge McFarland, the undersigned notes that in Count 4, which ostensibly relates solely to disability discrimination, the complaint uses the word "race" discrimination in place of the word "disability." (*See* Doc. 3, ¶¶103, 104, 105, 106).

6

to cover the entirety of Plaintiff's allegations regarding his "emotional distress" and any facts that would relate to any actual or perceived disability.

### B. The Mechanics of Production

The City argues that "to preserve judicial economy and prevent future discovery disputes," this Court should order Roper to execute releases that require his medical providers to send his records directly to counsel for the City. (Doc. 28 at 5, PageID 571). However, Plaintiff argues that this Court should permit his counsel to first obtain and produce the relevant records to Defendant. According to Plaintiff, counsel "has already requested the appropriate records in this matter and will produce them to Defendant," consistent with the approach used in *Ward v. ESchool Consultants, LLC*, No. 2:10-cv-866, 2011 WL 4402784 (S.D. Ohio Sept. 21, 2011).

In *Ward*, U.S. Magistrate Judge Mark Abel permitted the plaintiff's counsel to obtain and review the records first, holding that despite being the most expedient method of obtaining discovery, requiring a plaintiff to execute releases was "unwarranted and unauthorized by the Federal Rules of Civil Procedure." *Id.* at *1. The court reasoned:

> Although a medical release, subject to an attorneys' eyes only protective order, is often the easiest way to proceed with the discovery of medical records, the waiver of the physician-patient and psychotherapist-patient privilege effected by filing a lawsuit is limited to communications made by the patient to her treating source or the treating source's advice to the patient "that related causally or historically to physical or mental injuries that are relevant to issues in ... [the] civil action ...." R.C. § 2317.02(B)(2). For that reason, Plaintiff's counsel has the right to procure the medical records himself, review them, and produce those relevant to the issues in this litigation. Subject to an attorneys' eyes only protective order, Plaintiff's counsel should indicate the nature of any medical records not produced or for any redactions in medical records produced and state the reason for not producing them. A failure or refusal on the part of Plaintiff to produce such

7

records—including those concerning Plaintiff's current treatment—can be adjudicated as any other discovery dispute.

*Id.; accord Moody v. Honda of America, Mfg., Inc.*, No. 2:04-cv-880, 2006 U.S. Dist. Lexis 43092, *11, 2006 WL 1785464 (S.D. Ohio March 26, 2006).

For many practical reasons, the approach in *Ward* and *Moody* has not been universally adopted in every case. "[T]he fact that releases are not mandated by Rule 34 does not mean that they are never appropriate." *Shahbabian v. TriHealth, Inc.*, No. 1:18-cv-790, 2020 WL 419443, at *9 (S.D. Ohio Jan. 27, 2020). The approach is most often used in cases in which a party seeks overbroad discovery. *Compare*, *generally*, *Langenfeld v. Armstrong World Industries, Inc.*, 299 F.R.D. 547, 554-555 (S.D. Ohio 2014) (finding inapplicable concerns expressed in *Ward* where requests were already limited to medical information that is or could be related to issues in case, the psychotherapist-patient privilege had been waived by virtue of plaintiff's claims, and a protective order adequately covered privacy concerns); *see also Stewart v. Orion Federal Credit Union*, 285 F.R.D. 400, 402 (W.D. Tenn., 2012) (comparing the use of Rule 34 versus the use of Rule 45 to obtain medical records).

Rather than using the *Ward* approach in this case, the City advocates for an order requiring Plaintiff to execute releases based on *Ewert v. Holzer Clinic, Inc.*, No. 2:09-cv-131, 2009 U.S. Dist. LEXIS 120105, 2009 WL 4547567 (S.D. Ohio Dec. 1, 2009). However, *Ewert* involved a wrongful death claim. The court compelled the plaintiff to execute releases in part because the plaintiff's "entire medical history" was relevant and at issue, drawing a direct contrast to employment cases where the scope of relevant medical records is likely to be much narrower. *Id.*, 2009 WL 4547567 at *3 (citing *Moody*).

8

The City also cites to the parties' history of discovery disputes to date and the agreed protective order as grounds for ordering the releases of records directly to the City. For example, the City points out that Plaintiff twice previously agreed to provide requested discovery only after the City sought judicial intervention. Even though both prior disputes were resolved prior to actual judicial intervention, the City maintains that the course of proceedings illustrates Plaintiff's pattern of non-responsiveness. However, the undersigned finds it inappropriate to conduct a post-mortem analysis of disputes that were resolved extrajudicially.

Finally, the City expresses concerns that if the records are first released to Roper's counsel, they either will not be provided to the City in a timely manner or the parties will continue to disagree about what documents (if any) can be withheld. But the Court directed the parties to file briefs in this case to help expedite resolution of this ongoing dispute. And the Court remains hopeful that few (if any) additional disputes about scope will remain following the entry of this Order.

As discussed, the City's prior request for all of Plaintiff's medical records since 2000 or 2001 was overbroad, and Plaintiff's execution of releases for two providers for records dating back to 2015 was a fair and reasonable compromise. That said, Plaintiff proactively requested that records from his providers be sent to his counsel weeks ago.[7] Regardless of whether his counsel is yet in possession of the records, transmittal of all relevant records to defense counsel should be forthcoming quite soon. If not, this Court will not hesitate to require Plaintiff to execute appropriate releases.

---

[7]In email correspondence dated February 21, 2024, Plaintiff's counsel indicates he previously obtained releases from his client, had already requested the records, and would promptly provide them to the City's counsel.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED THAT**:

1. The City's construed motion to compel Plaintiff to execute medical releases (Doc. 28) is DENIED, but without prejudice to renew the motion if the City has not received the relevant records by **April 15, 2024**;

2. Consistent with this Order, Plaintiff shall *promptly* produce all relevant medical records to Defendant's counsel, and shall follow the approach set forth in *Ward* for any post-2015 records not produced;

3. The parties shall fully exhaust extrajudicial efforts to resolve any future discovery dispute prior to seeking judicial intervention. *Such efforts must include at least one in person or telephone conversation in addition to written correspondence.*

s/Stephanie K. Bowman  
Stephanie K. Bowman  
United States Magistrate Judge

10