IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JANOS ROPER, | : | Case No. 1:22-cv-652 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CITY OF CINCINNATI | : | |
| FIRE DEPARTMENT, | : | |
| | : | |
| Defendant. | : | |

---

### ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT (Doc. 49)

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 49). Plaintiff filed a Response in Opposition (Doc. 50), to which Defendant filed a Reply in Support (Doc. 51). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED.**

### FACTS

Plaintiff is a firefighter with Defendant City of Cincinnati's Fire Department. (Roper Dep., Doc. 39, Pg. ID 644.) He is in a protected class for his race; he is African American, Asian, Caucasian, and Native American. (Roper Response to Interrog., Doc. 39-11, Pg. ID 880.) Plaintiff has worked for Defendant as a firefighter for 24 years. (Roper Dep., Doc. 39, Pg. ID 644.) He was promoted to Lieutenant in 2015, and then to Captain in 2018, which is the role he currently holds. (*Id.*) Sometime during his employment with Defendant, Plaintiff was diagnosed with mental health issues, which qualify as a

disability and make him a protected class member. (*Id.* at Pg. ID 738-39.) In August 2019, Plaintiff applied for the District Chief position, for which he was required to take the in-person promotional exam administered by Defendant. (*Id.* at Pg. ID 669.) Plaintiff claims that he and several other individuals were given assigned seats for the exam, but others were not. (*Id.* at Pg. ID 673-74.) During the exam, Plaintiff and five other individuals experienced technical problems that caused formatting issues with their responses. (*Id.* at Pg. ID 675-78; Burks Dep., Doc. 41, Pg. ID 1181.) Plaintiff explained these issues to the proctor, Erica Burks, who eventually told Plaintiff to ignore the formatting issues. (Roper Dep., Doc. 39, Pg. ID 675-80.) Plaintiff experienced stress during the exam because of the time taken to resolve the formatting issues. (*Id.*) Of the six total individuals who experienced issues with their exam, five of them were African American, including Plaintiff, and one was white. (Employee Summary Reports, Docs. 49-1 through 49-4.) One of the examinees who experienced these issues, Captain Byrd, was later promoted to District Chief. (Roper Dep., Doc. 39, Pg. ID 676.)

After the exam, Plaintiff contacted Burks to discuss how the formatting issues would affect the grading process of the exam. (Burks Email, Doc. 39-17.) The exam vendor, Industrial/Organizational Solutions ("IOS") investigated the exam issues and determined that the best course of action would be to not penalize any candidate for formatting errors when grading these exams. (IOS Response, Doc. 41-5.) Once the exams were graded, IOS created the promotional list, ranking the candidates in order of their scores. (Roper Dep., Doc. 39, Pg. ID 700-01; Promotional List, Doc. 39-7.) Plaintiff ranked sixteenth on the list, but Defendant only had eleven vacancies for the position. (Roper

Dep., Doc. 39, Pg. ID 702-03.) Pursuant to Ohio Revised Code § 124.46, Defendant filled those eleven positions in order of the applicants' ranking on the promotional list. (*Id.*) In other words, the top eleven candidates were promoted; as such, Plaintiff was not selected. (*Id.*) Of these eleven promoted individuals, nine were Caucasian and two were racial minorities. (Promotional List, Doc. 39-7; Roper Response to Interrog., Doc. 39-11, Pg. ID 888.)

In November 2019, Plaintiff filed a Charge of Discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") against Defendant, alleging that he was subjected to different terms and conditions of employment during the promotional exam process based on his race. (2020 OCRC Charge, Doc. 39-5.) But, they dismissed his complaint in January 2020, explaining that race discrimination did not factor into his performance on the exam or lack of promotion. (*Id.*) In April 2020, Plaintiff filed a complaint of race discrimination after receiving his performance review from District Chief Vollmer, who originally gave him failing marks in the "attitude/initiative" category but then changed the score to passing. (Appeal Letter, Doc. 39-12, Pg. ID 893.) Plaintiff asserts that after this complaint Vollmer issued reprimands to Plaintiff for tasks which Plaintiff claims were unfair and outside of Defendant's policies. (Notice of Official Reprimand, Doc. 39-18; Roper Dep., Doc. 39, Pg. ID 798-800.) Plaintiff filed another claim with the EEOC and OCRC, this time claiming race and disability discrimination, along with retaliation, in February 2022. (2022 OCRC Charge, Doc. 39-24.) This charge, too, was dismissed. (*Id.*)

## PROCEDURAL POSTURE

On June 22, 2022, Plaintiff brought this suit against Defendant in the Hamilton County Court of Common Pleas. (Notice of Removal, Doc. 1.) Defendant removed the case to this Court on November 10, 2022, the same day it was served with Plaintiff's Complaint. (*Id.*) Plaintiff brought seven total claims against Defendant, but only three remain: failure to promote based on race discrimination, failure to promote based on disability discrimination, and retaliation. (Compl., Doc. 3; Order, Doc. 20.) Defendant moves for summary judgment on these remaining claims.

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside,* 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's

4

favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party

fails to make the necessary showing for an element on which it has the burden of proof,

then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Defendant asserts that it is entitled to summary judgment on Plaintiff's remaining

claims. (Motion, Doc. 49, Pg. ID 1458.) Defendant first contends that Plaintiff cannot

support a prima facie claim for failure to promote based on race or disability. (*Id.* at Pg.

ID 1462.) And, if Plaintiff did establish a prima facie case, Defendant maintains that it had

legitimate, non-discriminatory reasons for not promoting Plaintiff. (*Id.* at Pg. ID 1468.)

Finally, Defendant argues that Plaintiff failed to meet his burden on his retaliation claim.

(*Id.* at Pg. ID 1471.) The Court will address each argument in turn.

## I.      Plaintiff's Prima Facie Claims

Defendant states that Plaintiff has failed to establish prima facie claims for his

failure to promote causes of action. To establish a prima facie case of discrimination for

failure to promote, Plaintiff must demonstrate: (1) he is a member of a protected class; (2)

he applied for and was qualified for a promotion; (3) he was considered for and denied

the promotion; and (4) other employees of similar qualifications who were not protected

class members received promotions at the time that Plaintiff was denied a promotion.

*Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982). A plaintiff may establish his case by

presenting either direct evidence of discrimination or circumstantial evidence that allows

for an inference of discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir.

2003).

5

Plaintiff concedes that he has not provided direct evidence of discrimination and instead relies on circumstantial evidence. (*See generally* Response, Doc. 50.) When a plaintiff has not presented any direct evidence of discrimination, as is the case here, the *McDonnell Douglas* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, a plaintiff faces the initial burden of presenting a prima facie case, which creates a rebuttable presumption of discrimination that requires the defendant "to articulate some legitimate, nondiscriminatory reason for taking the challenged action." *Johnson*, 319 F.3d at 866 (quoting *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 572-73 (6th Cir. 2000)) (cleaned up). Once the defendant satisfies this burden, the plaintiff must prove that the defendant's proffered reason was a "pretext to hide unlawful discrimination." *Id.* (quoting *Johnson,* 215 F.3d at 573) (cleaned up). The Court will examine each of Plaintiff's claims of discrimination independently below.

### a. Plaintiff's Claim for Race Discrimination

Looking first at the claim for failure to promote based on race discrimination, Defendant concedes that Plaintiff is in a protected class for his race and that he was qualified for the promotional position. (Motion, Doc. 49, Pg ID 1463.) Defendant also agrees that Plaintiff was on the eligibility list for the position but was ultimately not promoted. (*Id.* at Pg. ID 1463-64.) Thus, Plaintiff has met the first three elements of his failure to promote claim. (*Id.*) But, Defendant argues that Plaintiff's claim fails on the final element, as Plaintiff has not shown any similarly situated, nonprotected individuals who were treated more favorably. (*Id.*)

6

To be similarly situated, individuals need not be perfectly correlated, but must be similar in "relevant aspects," such as working for the same supervisor, being subjected to the same standards, or engaging in the same conduct without differentiating circumstances to warrant different treatment. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Defendant argues that Plaintiff has failed to show similarly qualified, nonprotected individuals who were promoted over him. (Motion, Doc. 49, Pg. ID 1464.) In support, Defendant outlines the promotional process for the District Chief position, wherein individuals take the exam, are evaluated based on their scores, and are then ranked on the eligibility list. (*Id.* at Pg. ID 1465.) But, in Plaintiff's case, the individuals he points to as similarly situated all scored higher than he did on the test; they were therefore promoted before him. (*Id.* at Pg. ID 1464-65.) And, because they were ranked higher than he was, these individuals were not similarly situated. Defendant cites to several cases where the Sixth Circuit held that differences in performance ratings or test scores render two employees not similarly situated. (*Id.*); *see, e.g., Gaffney v. Potter*, 345 F. App'x 991, 993 (6th Cir. 2009); *Johnson v. Metro. Govt. of Nashville & Davidson Cty.*, 502 F. App'x 523, 537 (6th Cir. 2012). And, assuming that the promoted individuals were similarly situated, Defendant argues that Plaintiff's claim still fails because two of the promoted employees were also protected class members for their race. (*Id.* at Pg. ID 1465.) Thus, Defendant maintains that Plaintiff has not met the fourth element of a prima facie claim for race discrimination.

In response, Plaintiff argues that the promoted individuals were all similarly situated to him because they were all "eligible to take the exam." (Response, Doc. 50, Pg. ID 1564.) But, importantly, he does not support his claim with any case law showing that individuals with different test scores are still considered similarly situated. Indeed, the Court finds that a score on a qualifying exam is certainly a "relevant aspect[]" for determining whether individuals are similarly situated. *Ercegovich*, 154 F.3d at 352; *see also Gaffney*, 345 F. App'x at 993; *Johnson*, 502 F. App'x at 537. As the promoted individuals all scored higher than Plaintiff, the Court agrees with Defendant that Plaintiff did not possess similar qualifications to those promoted. (*See* Reply, Doc. 51, Pg. ID 1579.) Thus, the promoted employees are not similarly situated.

But, Plaintiff also points to the fact that white applicants were able to complete the exam, whereas he was denied that opportunity, as evidence of similarly situated individuals being treated more favorably. (Reply, Doc. 51, Pg. ID 1579.) However, as Defendant points out, the record does not contain evidence that Plaintiff was unable to complete the exam, only that he experienced difficulty with the issues. (Reply, Doc. 51, Pg. ID 1567; *see also* Roper Dep., Doc. 39, Pg. ID 675-80.) And, IOS states that "[a]ssessors were explicitly instructed to ignore formatting concerns," and that none of the candidates would be penalized for such errors. (IOS Response, Doc. 41-5.) Further, Plaintiff reinforced that Defendant treated all examinees equally, stating that all of the test-takers were told at the end of the exam to ignore any formatting issues in their responses. (Roper Dep., Doc. 39, Pg. ID 692-94.) Additionally, just as with the individuals who were promoted, protected and nonprotected individuals alike experienced the same technical

issues with the exam. (Employee Summary Reports, Docs. 49-1 through 49-4.) This discredits the claim that Defendant treated similarly situated nonprotected individuals more favorably with the promotional exam, since a nonprotected test-taker received the same problematic exam as Plaintiff. Plaintiff's claim still fails on the final element, even when accounting for the exam issues.

Without demonstrating the final element of the failure to promote for race discrimination claim, Plaintiff has not established a prima facie case of discrimination. The Court's analysis of the race discrimination claim can end here without moving to the next step of the *McDonnell Douglas* burden-shifting framework. Because no genuine dispute of material fact exists as to whether Defendant refused to promote Plaintiff because of his race, Defendant is entitled to summary judgment on this claim.

### b. Plaintiff's Claim for Disability Discrimination

Plaintiff also brings a claim of failure to promote based on disability discrimination, which carries the same elements to establish a prima facie case as his race discrimination claim. *See Brown*, 693 F.2d 603. Defendant contends, however, that "the record is barren when it comes to evidence that anyone within the City knew [Plaintiff] had a disability until after the 2019 District Chief promotional process ended." (Motion, Doc. 49, Pg. ID 1467.) Defendant cites to a recent case where the record similarly lacked allegations that the defendant-employer knew of the plaintiff-employee's disability. (*Id.* (citing *Herbert v. KC Robotics, Inc.*, No. 1:23-CV-633, 2024 WL 3925673 (S.D. Ohio Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4278309 (S.D. Ohio Sept. 24, 2024).) In *Herbert*, the Court found that the record contained "no indication" that the employer

knew of the plaintiff's disability at the time of the promotion decision. 2024 WL 3925673, at *6. This lack of knowledge meant there was "insufficient factual content to warrant a reasonable inference" that the plaintiff was passed over for a promotion because of his disability. *Id.* As such, the Court dismissed the plaintiff's failure to promote claim. *Id.* at *6-7.

Defendant claims that the record in this case is similarly insufficient to show that Defendant had knowledge of Plaintiff's disability prior to the 2019 promotional process. (Motion, Doc. 49, Pg. ID 1467-68.) Specifically, Plaintiff stated that his family, health care professionals, a friend, and some colleagues at the Public Employee Assistance Program knew about his mental health issues. (Roper Dep., Doc. 39, Pg. ID 742-43.) But, Defendant's Human Resources department only learned about his disabilities after the 2019 promotional process had ended. (*Id.* at Pg. ID 743-45; 758-59; Accommodation Email, Doc. 39-14.) Burks also testified that she was unaware of Plaintiff requesting medical leave at any point but remembered that he had submitted an accommodation request before the 2022 District Chief promotional process. (Burks Dep., Doc. 41, Pg. ID 1161-62.) Furthermore, Assistant Chief of Human Resources, Steven Breitfelder, and Plaintiff's supervisor, Jason Vollmer, confirmed that they were unaware of Plaintiff's disability. (Breitfelder Dep., Doc. 43, Pg. ID 1282-83; Vollmer Dep., Doc. 47, Pg. ID 1407.)

In response, Plaintiff states that Defendant perceived him as disabled because his two supervisors recalled that he took some extended time off from work. (Response, Doc. 50, Pg. ID 1571-72.) However, the testimony from both Breitfelder and Vollmer reveals that they only recalled Plaintiff taking extended sick time off but were unaware of the

circumstances surrounding that leave. (Breitfelder Dep., Doc. 43, Pg. ID 1282-83; Vollmer Dep., Doc. 47, Pg. ID 1376-77.) So, the record is still void of facts showing that Defendant had knowledge of Plaintiff's disability. The Court, therefore, finds it cannot make a "reasonable inference" that Defendant declined to promote Plaintiff because of his disability when Defendant was unaware of this disability. *See Herbert*, 2024 WL 3925673, at *6. As with the race discrimination claim, Plaintiff has not established a prima facie case of failure to promote for disability discrimination and so the burden does not shift to Defendant under the *McDonnell Douglas* framework. Thus, no genuine dispute of material fact exists on this claim either and Defendant is entitled to summary judgment.

## II. Plaintiff's Retaliation Claim

Plaintiff's remaining claim states that Defendant retaliated after he complained to management about discrimination, harassment, and disparate treatment. (Compl., Doc. 3, ¶ 110.) To establish a prima facie case for retaliation under either Title VII or Ohio Revised Code § 4112, Plaintiff must prove that: (1) he engaged in a protected activity under Title VII; (2) Defendant knew he exercised his protected rights; (3) Defendant took an adverse employment action against him; and (4) Plaintiff's protected activity was the direct cause of the adverse employment action. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730-31 (6th Cir. 2014)). If Plaintiff successfully establishes his prima facie case, then the *McDonnell Douglas* framework shifts the burden to Defendant to prove a "legitimate, nondiscriminatory reason for its action." 411 U.S. at 802. And, if Defendant satisfies that burden, then

11

Plaintiff must demonstrate that Defendant's proffered reason is pretext for discrimination. *Id.* at 804.

Courts have defined "protected activity" as one of two types: participation and opposition. *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 357 (6th Cir. 2020). More specifically, opposition is when a plaintiff resists an employer's discriminatory activity or practice that Title VII deems unlawful, while participation is when a plaintiff testifies, assists, or participates in an investigation or proceeding under Title VII. *Id.* In *Stanley*, the Sixth Circuit upheld summary judgment in favor of the employer-defendant where the plaintiff failed to show that she engaged in a protected activity and thus did not establish a prima facie retaliation claim. *Id.* Here, Defendant contends that Plaintiff's claim should fail for the same reason. (Motion, Doc. 49, Pg. ID 1472.)

As evidence of a protected activity, Plaintiff states that he filed a grievance of race discrimination with Defendant's Civil Service Commission regarding both the exam conditions and Vollmer's behavior. (Response, Doc. 50, Pg. ID 1567-68; *see also* Compl., Doc. 3, ¶ 45; Roper Dep., Doc. 39, Pg. ID 709-12, 724-26.) Defendant states that Plaintiff makes this claim for the first time in his Response, and thus the Court should not consider his argument. (Reply, Doc. 51, Pg. ID 1582.) However, Plaintiff mentions that he and other African American employees made Civil Service Commission race discrimination grievances in both his Complaint and deposition; therefore, the Court will consider his argument. (Compl., Doc. 3, ¶ 45; Roper Dep., Doc. 39, Pg. ID 709-12, 724-26.) And, the Court agrees with Plaintiff that making an official race discrimination complaint is indeed a protected activity for purposes of his retaliation claim. *E.E.O.C. v. New Breed Logistics,*

783 F.3d 1057, 1067 (6th Cir. 2015) (finding that complaints to management and less formal protests than EEOC complaints are protected activities).

However, although Plaintiff does not directly address the third element, Plaintiff asserts that Vollmer's "reprimands were pretext for retaliation," indicating that he believes Vollmer's reprimands were the adverse employment actions. (Response, Doc. 50, Pg. ID 1568.) The Court disagrees. It is well-settled that "a written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action" for purposes of a Title VII claim. *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012) (collecting cases). And here, Plaintiff has not pointed to any fact on the record showing that these reprimands prevented him from receiving a raise or promotion, or caused him to experience any other adverse employment consequence. On this third element alone, therefore, Plaintiff's retaliation claim fails.

Nevertheless, Defendant also contends that Plaintiff fails to establish a prima facie retaliation claim because he cannot show the direct causal connection between his complaints and any adverse employment action. (Reply, Doc. 51, Pg. ID 1583-84.) "Whether protected activity was the but-for cause of an adverse employment action depends upon the context in which that action occurs." *Kenney*, 965 F.3d at 448. The absence of corroborative causal evidence generally undermines a theory of causation. *Robertson v. FinPan, Inc.*, No. 1:18-CV-716, 2021 WL 2534174, at *10 (S.D Ohio June 21, 2021) (citing *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). And, temporal proximity alone is not sufficient to establish causation, especially as more time

elapses between the protected activity and the alleged adverse action. *Vereecke*, 609 F.3d at 400. The Court must look at "the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Id.* at 401.

Defendant argues that the record contains a "genuine lack of support for causal connection and certainly no support for a temporal proximity argument," as Plaintiff does not seem certain about the dates of his complaints. (Reply, Doc. 51, Pg. ID 1584.) Defendant cites to Plaintiff's deposition where he states: "I felt [the reprimand from Vollmer] was based on race because I talked to [Vollmer]. And me, as an African American person, going to District Chief Vollmer who identified as Caucasian . . . he failed to listen to me." (*Id.* (quoting Roper Dep., Doc. 39, Pg. ID 726.)) When asked directly what evidence Plaintiff had to support the claim that Vollmer gave him reprimands in retaliation for his discrimination complaints, Plaintiff responded first:

> Because I had discussed my concerns with District Chief Vollmer, prior to the incident, about speeding, and my previous history with him. And then he was aware that I was off sick for about a month or so, and he still gave me a written reprimand for [not completing the required HIPAA training], after I acknowledged that I'm working on it. As he was coming down in the room, I was basically finishing the HIPAA training. I even told him, Chief, I'm finishing it right now as you're talking. I'm almost done. He said, it doesn't matter. You should have finished it already.

(*Id.* at Pg. ID 797.) And, when asked a second time during his deposition, Plaintiff gave a similarly vague answer, stating his evidence to support the retaliation claim was "the public record, and I submitted to civil service, as well as my previous history with District Chief Vollmer." (*Id.* at Pg. ID 799.) Essentially, Plaintiff seems to indicate that because he formally complained, and because of his race, Vollmer unfairly reprimanded him; but,

14

Defendant asserts that Plaintiff's statements are "insufficient to support but-for causation." (Reply, Doc. 51, Pg. ID 1584.) The Court agrees. Beyond stating the bare facts that Vollmer reprimanded him for actions that Plaintiff did not think warranted reprimand, Plaintiff has not shown indicia that his complaints directly caused the unwarranted reprimands. He has not indicated what "previous history" he and Vollmer shared that would cause him to believe the actions were retaliatory. Nor has he pointed to any additional information on the record beyond how he felt about the situation that creates circumstances from which the Court could infer retaliation. He merely makes the conclusory assertion that his complaint caused Vollmer to retaliate against him.

This finding is further backed when the Court considers the totality of the circumstances, specifically timing. The Court notes that approximately five months passed between Plaintiff's complaint with the Civil Service Commission in November 2019 and his poor performance review from Vollmer in April 2020. Courts have found that even shorter gaps between the protected activity and adverse action, absent other causal evidence, were insufficient to show causation. *Randolph v. Ohio Dept. of Youth Servs.*, 456 F.3d 724, 737 (6th Cir. 2006) (four-months gap without indicia of retaliatory conduct was insufficient to show causation); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding the same); *Kenney*, 965 F.3d at 449 (finding that even a 75-day gap, standing alone, was insufficient to show a "convincing cause for proving causation"). Thus, a five-month gap, with no other indicia of retaliatory conduct, is insufficient to show that Vollmer's actions were in retaliation to Plaintiff's complaints. Demonstrating neither the third nor fourth element of his retaliation claim, Plaintiff has

15

failed to establish a prima facie case. No genuine dispute as to Plaintiff's retaliation claim remains, and Defendant is entitled to summary judgment.

## CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED**;

2. Summary judgment is **ENTERED** in favor of Defendant on all of Plaintiff's remaining claims;

3. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND